1  John Du Wors, State Bar No. 233913
   *john@newmanlaw.com*
2  NEWMAN DU WORS LLP
   2101 Fourth Avenue, Suite 1500
3  Seattle, WA 98121
   Phone: (206) 274-2800
4  Facsimile: (206) 274-2801

5  Counsel for Plaintiff
   Matthew Allan

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| MATTHEW ALLAN, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>COINBASE, INC., a Delaware company,<br><br>    Defendant. | Case No. 3:23-cv-00074<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT—1
[3:23-cv-00074]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

Plaintiff Matthew Allan (hereinafter "Allan" or "Plaintiff"), by and through his counsel, brings this complaint against Defendant Coinbase, Inc. ("Coinbase" or "Defendant"), pursuant to the Electronic Funds Transfer Act, 15 USC § 1693 et seq. ("EFTA") and 12 C.F.R. §§ 1005.1–1005.20 ("Regulation E" of the EFTA), and California Business and Professions Code §§ 17200, 17500. Plaintiff brings this complaint on personal knowledge as to Plaintiff's own activities, and on information and belief as to the activities of others, as follows:

## NATURE OF THE SUIT

1. Defendant is a subsidiary of publicly traded entity Coinbase Global, Inc. Defendant operates an exchange where users buy and sell cryptocurrencies. Defendant markets itself to potential users as a safe platform for holding cryptocurrency. To that end, Defendant projects an impression of vigilance and protection against fraud, and Coinbase users trust Defendant to hold their cryptocurrencies and fiat currencies.

2. Unbeknownst to its users, however, Defendant refrains from implementing basic fraud detection and/or prevention measures. And due to such systemic flaws, bad actors have increasingly targeted Defendant and its users.

3. After such bad actors compromise users' Coinbase accounts and steal their cryptocurrency, Defendant passes on responsibility for the losses to the users it puts at risk.[1]

4. For example, in March 2020, due to Defendant's misleading ads promising account protection, Mr. Allan misplaced trust in Defendant to hold his cryptocurrency. Several weeks later, Defendant's inadequate safeguards resulted in the unauthorized transfer of virtually all of Mr. Allan's Coinbase cryptocurrency funds.

5. However, Defendant refuse to credit and/or provisionally recredit the stolen funds as required by the EFTA and Regulation E. To make matters worse, Defendant then informed Mr. Allan that the fraud protection he was paying for did not exist.

6. Mr. Allan seeks compensatory damages, treble damages, statutory damages, attorneys' fees, costs of suit, interest, and any other relief the Court deems appropriate.

---

[1] It accomplishes this, in part, through a one-sided contract of adhesion that contains various unconscionable provisions. *See Bielski v. Coinbase, Inc.*, No. C 21-07478 WHA, 2022 WL 1062049, at *1 (N.D. Cal. Apr. 8, 2022).

COMPLAINT — 2
[3:23-cv-00074]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# THE PARTIES

7. Plaintiff Matthew Allan is a citizen of California, residing in San Jose, California.

8. Defendant is a Delaware company that operates cryptocurrency exchanges and related businesses globally. Upon information and belief, Defendant's principal place of business and executive offices are in San Francisco, California. Defendant is registered with the Secretary of State of California.

# JURISDICTION AND VENUE

9. This action is brought pursuant to the Electronic Funds Transfer Act of 1978, 15 U.S.C. § 1693, *et seq. See e.g.,* 15 U.S.C. § 1693m(g) ("[A]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation"). Thus, this Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331.

10. The Court also has supplemental jurisdiction over Mr. Allan's CLRA, UCL, unjust enrichment, and negligence claims pursuant to 28 U.S.C. § 1367. Those claims are so related to the EFTA claim that they form part of the same case or controversy under Article III of the United States Constitution.

11. This Court also has jurisdiction because the arbitration clause in Mr. Allan's user agreement the Court correctly recognized that clause as invalid. *See Bielski*, No. C 21-07478 WHA, 2022 WL 1062049, at *1 ("[T]he delegation clause and the broader arbitration provision are unconscionable[.]"); *see also* Coinbase User Agreement, attached hereto as Exhibit A (requiring the same non-bilateral formal complaint process identified as unconscionable in *Bielski*).

12. A substantial part of the events or omissions giving rise to the claims occurred in this District. Defendant also has substantial and systematic contacts in this District as alleged in further detail below. Thus, this Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391(b) and (c).

COMPLAINT — 3
[3:23-cv-00074]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

13. Although incorporated in Delaware, Defendant is also subject to general jurisdiction in California. Defendant has its headquarters and principal place of business in the Bay Area, engages in extensive business there and throughout the state, and is essentially "at home" in California.

## DIVISIONAL ASSIGNMENT

14. A substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in San Francisco County. Thus, under Civil L.R. 3.2(c) and (d), this action is properly assigned to the San Francisco or Oakland Divisions of this Court.

## BACKGROUND

**A.  Coinbase's website misled Mr. Allan into believing he had fraud protection.**

15. In or about March 2022, Mr. Allan visited Defendant's website. The website advertises that "Coinbase One beta is a subscription product that gives members access to: . . . $1M Account Protection." "Keep your peace of mind knowing your account is protected from unauthorized access." Exhibit B, https://help.coinbase.com/en/coinbase/other-topics/coinbase-one/account (last visited July 5, 2022)).

16. The web ad further explains that "[e]ligible users may sign up for Coinbase One beta which is an automatically renewing subscription requiring recurring payments[.]" *Id*.

17. The webpage further clarifies, under the heading "**How to join Coinbase One beta**," that:

> . . . If you're a part of this beta launch, Coinbase One beta will be listed in your Settings when you sign into your Coinbase account from a web browser. If you sign up, your account will be charged a recurring monthly payment.

*Id*. (emphasis in original).

18. Clicking on "Learn about our Coinbase One beta free trial" under the same heading opens another webpage with the heading "**How can I sign up for the Coinbase One beta free trial?**" Exhibit C. The webpage similarly states: "If you're eligible, go to your **Settings** page and click **Join Free Trial** to opt in."

COMPLAINT — 4
[3:23-cv-00074]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

19. Accordingly, on March 24, 2022, Mr. Allan navigated to his settings, which showed a tab labeled "Coinbase One," under which prominently displayed:

## Coinbase One

Free for 30 days.

Get 30 days free
$29.99/month after trial Cancel anytime.

Exhibit D. Realizing that he was eligible for the Coinbase One beta program by it being listed in his settings, Mr. Allan then clicked the "Get 30 days free" button to register for the Coinbase One subscription.

20. After clicking the "Get 30 days free" button, but before entering his bank account information, a pop-up surprisingly appears. *See* Exhibit E. The pop-up takes up a fraction of the webpage, over half of the popup constitutes a shield symbol, under which reads "**Account Takeover Protection**" in bold type, larger font. A blue "Got it" button figures prominently at the bottom of the pop-up. *Id*.

21. In between the "**Account Takeover Protection**" statement and "Got it" button, in un-emphasized, smaller, plain, grey, text against a white background reads: "To be eligible for $1M account takeover protection, you need to verify your ID and upgrade your 2-step verification to an authenticator app or security key," and "See full terms to be sure you qualify." *Id*. The popup did not expressly state that the user was agreeing to any such terms by clicking on the "Got it" button.[2] Nor did the popup modify the website's previous representations that eligibility to participate in the Coinbase One beta subscription was confirmed by it being listed in a user's "Settings" and by paying for the service thereafter.

22. Mr. Allan proceeded to the next screen where he entered his bank account information, after which his bank account was charged for the Coinbase One subscription.

---

[2] Nor do users agree to sign up for a Coinbase One subscription at the time of Coinbase registration, when they are first presented with the User Agreement.

COMPLAINT—5
[3:23-cv-00074]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**B.   After Defendant's lack of safeguards against fraud resulted in the theft of Mr. Allan's cryptocurrency, Defendant passed responsibility for the theft on to Mr. Allan.**

23. With peace of mind that his account was protected from fraud, Mr. Allan purchased two Bitcoins for a total of $87,388.86, on April 6, 2022.

24. Two weeks later, on April 20, 2022, $97,996.84 of Mr. Allan's cryptocurrency disappeared from his account.

25. Mr. Allan quickly realized this and immediately contacted Defendant by phone. The representative noted that Mr. Allan was protected by a Coinbase One subscription, and would work on his case and respond in the next day or two.

26. The next day (without assistance from Coinbase), Mr. Allan discovered that Coinbase had permitted someone unauthorized access to Mr. Allan's account (e.g., perhaps through the use of a ported phone number).[3] On information and belief, the bad actor then logged in to Mr. Allan's account, switched the account's email address to mailan11337@yopmail.com, and changed the account's password.

27. Three days later, Defendant sent Mr. Allan an email acknowledging that "a new device was also confirmed for use with your account via the new device confirmation link sent to your email address," which "suggests that your email account may have been compromised." April 24, 2022 email from Coinbase. The email further noted that "[a]n unauthorized password reset may also indicate that your phone number has been compromised." *Id*. Nevertheless, the email alleged that

> Customers are responsible for the securing of their devices and credentials used to access their email and Coinbase account. As such, customers are responsible for any activity that occurs on their account, even when those devices or credentials are compromised.

*Id.*

28. In stark contrast to Defendant's late identification of a "new device" used to compromise Mr. Allan's account, Defendant's peers implement industry-standard safeguards to stop similar thefts before they occur. For example, the very same day (i.e., April 20, 2022)

---

[3] This occurred despite Mr. Allan, on information and belief, at all times keeping his Coinbase account password secret and maintaining his phone device in his sole possession.

Defendant permitted Mr. Allan's funds to be absconded, Gemini Trust Company LLC ("Gemini") blocked a separate attempt to transfer Mr. Allan's cryptocurrency (held with Gemini).

29. More specifically, *before* approving the transfer, Gemini noticed that the request to transfer essentially all of Mr. Allan's funds originated from a windows 10 device running Chrome 10—not Mr. Allan's usual iPhone. The device was also associated with a new IP address from the wrong geo-location (i.e., Ashburn, Virginia, while Mr. Allan resides in California). Gemini also recognized that Mr. Allan's email address had been changed to a new email address with a clearly bogus domain (i.e., "mailan11337@yopmail.com").

30. Thus, rather than identify fraud indicators several days *after* an unauthorized electronic fund transfer, and only after receiving a report, Gemini correctly flagged the attempt as unauthorized *before* approving the transfer request, and consequently blocked the transfer. That is because Gemini implements industry-standard fraud detection and prevention procedures.[4]

31. Yet Defendant refrained from implementing similar protections for Mr. Allan, while passing responsibility for the resulting fraud onto Mr. Allan himself.

**C.   Defendant claimed for the First Time Mr. Allan Had no Fraud Protection.**

32. Shortly after Defendant's acknowledgement that a new device had been used to compromise Mr. Allan's account, and Defendant's passing responsibility for the unauthorized fund transfer onto Mr. Allan, Defendant sent another email stating for the first time that:

> your account is not eligible for the Coinbase One Account Protection Program. To be eligible for this program, customers must fulfill the requirements stated in the Coinbase Account Protection page here: . . . [e.g., user of an authenticator app]

April 25, 2022, 12:37 PM email from Coinbase. That email further stated:

> All cryptocurrency transactions that are confirmed on the blockchain are irreversible. Coinbase has no information on ownership or external

---

[4] Such industry-standard fraud prevention measures include detecting whether a fund transfer is being requested from a new device, which services are offered by cybersecurity risk management vendors (e.g., Threatmetrix) at reasonable costs. Similarly, third-party vendors (e.g., Emailage Corp.) commonly detect "high risk" email addresses—for example, by identifying heavily numeric email addresses, determining how long since the email addresses were created, how often they have been used, and whether the associated domains are legitimate.

COMPLAINT—7
[3:23-cv-00074]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

cryptocurrency addresses, and because this is an external process, there is no way for Coinbase to cancel, reverse, or recover these funds on your behalf.

*Id.*

33. Defendant's refusal to recredit Mr. Allan's stolen funds, and its deceptive advertisements of fraud protection, leading Mr. Allan to trust Defendant with his funds, violate state and federal laws, as explained below.

**FIRST CAUSE OF ACTION**
Coinbase Violated the EFTA
15 U.S. Code § 1693 et seq. (e.g., 1693m(a))

34. Plaintiff repeats, and incorporates herein by reference, all the foregoing paragraphs, and if necessary, pleads this cause of action in the alternative.

**A.  Defendant violated the EFTA requirements to determine and report whether an error occurred, and recredit the consumer's account.**

35. The EFTA "is a remedial consumer statute which should be construed broadly in favor of the consumer." *Charvat v. First Nat'l Bank of Wahoo*, 2012 WL 2016184, at *2 (D. Ne. June 4, 2012) (citing *Campbell v. Hope Cmty. Cred. Union*, 2012 WL 423432, at *2 (W.D. Tenn. Feb. 8, 2012)). Regulation E contains nearly identical language to the EFTA and was similarly enacted with the primary objective of protecting individual consumers engaging in electronic fund transfers. *See* 12 C.F.R. § 205.1(b).

36. Yet Coinbase's April 24, 2022 report—belatedly acknowledging that his account had been compromised using a "new device"—simply pays lip service to the EFTA, while still falling short of statutory compliance.

37. First, the EFTA requires that a financial institution investigate a consumer's notice of an alleged error, report the results of the investigation, and indicate whether an error occurred. *See* 15 U.S. Code § 1693f(a)(3). Yet Defendant's April 24, 2022 email omits any express conclusion that an error occurred.

38. Second, the EFTA requires that the financial institution correct any error within one business day (of determining there was an error). *See* 15 U.S. Code § 1693f(b); 12 CFR § 205.11(c)(1). Alternatively, the financial institution may "provisionally recredit the consumer's

COMPLAINT—8
[3:23-cv-00074]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

account for the amount alleged to be in error" within ten business days (after receiving notice of the error). 15 U.S. Code § 1693f(c). But Defendant neither corrected the error nor provisionally recredited Mr. Allan's account. *See* 15 U.S. Code § 1693f(b)–(c).

39.     Third, to the extent the report's omission of any express conclusion that an error occurred and Defendant's refraining from recrediting Mr. Allan suggest that Defendant believes there was no error, Defendant's email still violates the EFTA. That is because when a financial institution believes that no error occurred after receiving a consumer's notice of an error and performing an investigation, the financial institution must, within three business days (after conclusion of the investigation) ,"deliver . . . to the consumer an explanation of its findings [of no error]," and "include notice of the [consumer's] right to request reproductions" "of all documents which the financial institution relied on to conclude that such error did not occur." 15 U.S. Code § 1693f(d). Yet here Defendant's email omits the required notice of Mr. Allan's right to request the documents Defendant used in making any determination of no error. *See* 15 U.S. Code § 1693f(d); 12 CFR § 205.11(d)(1).

40.     Fourth, when a financial institution believes that no error occurred, it must also have a reasonable basis for believing an error did not occur. But Defendant's email simply articulates a basis confirming that an error occurred.

41.     For example, the email recognizes that Mr. Allan's account had been compromised using a new device and new email, thus implicitly acknowledging that Mr. Allan's cryptocurrency was transferred without his actual authority. Moreover, the EFTA expressly defines "unauthorized electronic fund transfer" as

> an electronic fund transfer from a consumer's account initiated by a person other than the consumer *without actual authority* to initiate such transfer and from which the consumer receives no benefit.

15 U.S.C. § 1693(a)(12) (emphasis added). Thus, the email at least impliedly confirms that the transfer of Mr. Allan's cryptocurrency was in fact an "unauthorized electronic fund transfer" (i.e., an "error").

COMPLAINT—9
[3:23-cv-00074]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**B. No exception remedies Defendant's EFTA violations.**

42. Moreover, no exceptions to an "unauthorized electronic fund transfer" apply here. First, Mr. Allan's cryptocurrency was not transferred using an Mr. Allan's phone or any component thereof, or any "access device" furnished by Mr. Allan. *See* 12 C.F.R. § 1005.2(h)(emphasis added). Instead, using Mr. Allan's ported phone number, the transfer was accomplished using a completely new device that Mr. Allan never authorized or furnished. 15 U.S.C. § 1693(m)(1).

43. Mr. Allan's password similarly falls outside the definition of any such "device." In any event did Mr. Allan ever give his password away to anyone else.[5]

44. The mailan11337@yopmail.com email address is also completely unlike an "access device," and was never used by Mr. Allan to initiate electronic fund transfers. *See* 12 C.F.R. § 1005.2(a)(1).

45. Second, because Mr. Allan never used a ported phone number alone without his actual phone/device, or a yopmail.com email address, to request to receive, use, or authorize another to use "to transfer money between accounts or to obtain money, property, or services." 12 C.F.R. § 205.2(a)(2)(i), the transfer here did not involve any "*accepted* access device."

46. Moreover, the EFTA's "accepted access device" exception requires that "the financial institution must have provided a means to identify the consumer to whom it was issued." 12 C.F.R. § 205.6(a). And here, Mr. Allan likewise did not authorize Coinbase to identify him using mailan11337@yopmail.com or a ported phone number--which are saliently different from secure types of personal identifying information (such as a photograph, fingerprint, personal visit, signature comparison, etc.). 12 C.F.R. pt. 1005, Supp. I ¶ 5(b)(4).

**C. Mr. Allan's responsibility for the stolen funds is, in any event, very limited.**

47. Even if the unauthorized fund transfer had involved reasonable means of identifying Mr. Allan, where a financial institution "fails to correctly verify the consumer's identity, the

---

[5] It is anticipated that Defendant will wrongly claim that the User Agreement's one-sided blanket statement "[w]e assume no responsibility for any loss that you may sustain due to compromise of account login credentials due to no fault of Coinbase," User Agreement, Exhibit A, somehow trumps the EFTA. In any event, the provision results in no waiver her because Defendant's lack of vigilance resulted in the loss of Mr. Allan's funds.

COMPLAINT—10
[3:23-cv-00074]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

consumer is not liable for any unauthorized transfers from the account." 12 C.F.R. Pt. 205, Supp. I § 205.5 para. 5(b)(4); *see also Acafrao v. U.S. Century Bank*, No. 09-21695-CIV, 2010 WL 11596731, at *7 (S.D. Fla. Aug. 9, 2010).

48. Furthermore, both Reg E and the EFTA expressly require that, even where an "accepted access device" is used, "[i]f the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed . . . $50." 12 C.F.R. § 205.6(a)–(b)(1); *see also* 15 U.S. Code § 1693g ("In no event . . . shall a consumer's liability for an unauthorized transfer exceed . . . $50[.]"). Here, because Mr. Allan *immediately* informed Defendant of the unauthorized fund transfer, his liability is extremely limited even if the unauthorized transfer had involved an "accepted access device" (which it did not involve).[6]

49. Mr. Allan has suffered significant harm from the transfer, by losing almost all of the cryptocurrency held by Defendant.

50. Accordingly, Mr. Allan is entitled to compensatory damages, attorneys' fees, and costs under 15 U.S.C. § 1693m, for Defendant's violations of the EFTA by not correcting errors from unauthorized electronic fund transfers, and not limiting consumer liability as required.

51. Mr. Allan is also entitled to treble damages because Defendant has still not provided a reasonable basis for believing Mr. Allan's account was not in "error," yet implied that conclusion by not timely correcting the error or providing notice of Mr. Allan's right to request the documents on which Defendant's conclusion of no error was based. Moreover, Defendant could not have reasonably drawn a conclusion of no error from the evidence available to Defendant at the time of its investigation.

---

[6] Notably, this is the case even if a bad actor had gained control of Mr. Allan's accepted access device through Mr. Allan's negligence–which was not the case here. *See* 12 C.F.R. pt. 1005, Supp. I ¶ 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E.").

COMPLAINT—11
[3:23-cv-00074]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# SECOND CAUSE OF ACTION
Coinbase violated California's Consumers Legal Remedies Act (the "CLRA") and Unfair and Deceptive Practices Statute,
California Code of Civil Procedure §§ 1750, *et seq.* and
California's False Advertising Law ("FAL"),
California Business and Professions Code § 17500 *et seq.*

52. Plaintiff repeats, and incorporates herein by reference, all the foregoing paragraphs, and if necessary, pleads this cause of action in the alternative.

53. This cause of action is brought pursuant to the CLRA, California Civil Code §§ 1750–1784, and pursuant to Section 17500 of the California Business and Professions Code.

54. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

55. Like the CLRA, the FAL prohibits making untrue or misleading statements in connection with the sale of goods or services. *See* Cal. Bus. & Prof. Code § 17500.

56. The CLRA applies to Defendant's actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

57. Plaintiff is a "consumer" within the meaning of California Civil Code § 1761(d).

58. Coinbase One account protection is a "service" within the meaning of California Civil Code § 1761(b).

59. Defendant has violated California Civil Code § 1770(a)(9) of the CLRA, by advertising Coinbase One account protection with an intent not to sell it as advertised. Specifically, Defendant advertised (and continues to advertise) that it would provide Coinbase One services that included fraud protection if Coinbase One Beta option was listed in a consumer's settings and if the consumer signed up and paid for such services. But Defendant had no intent to deliver fraud protection upon its users' fulfillment of such conditions.

60. By representing that purchasing Coinbase One protection would include account protection when it did not, Defendant has also violated California Civil Code § 1770(a)(14).

COMPLAINT—12
[3:23-cv-00074]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

61. Defendant made such misleading statements regarding Coinbase One services over the Internet and knew or should have known that such advertising was false or misleading.

62. Mr. Allan relied on Defendant's misleading statements regarding Coinbase One account protection by purchasing two Bitcoins using the Coinbase platform and by selecting Defendant to hold his cryptocurrency, which was subsequently stolen. Plaintiff would not have trusted Defendant to hold his Bitcoins and other cryptocurrency were it not for Defendant's misleading statements regarding account protection.

63. On September 1, 2022, Plaintiff provided Defendant with written notice of his claims, via U.S. certified mail, return receipt requested, and demanded that, within 30 days, Defendant correct, repair, replace or otherwise rectify the unfair and deceptive practices complained of herein pursuant to Civil Code §§ 1770, 1782. *See* Exhibit F.[7] Defendant did not do so.

64. Therefore, Plaintiff now seeks damages for such unfair and deceptive practices pursuant to Civil Code § 1782. Specifically, Plaintiff is entitled to attorney's fees, punitive damages, and statutory damages under the CLRA.

65. Plaintiff also requests a fine and other penalties as the Court deems appropriate pursuant to section 17500.

### THIRD CAUSE OF ACTION
Coinbase Violated California's Unfair Competition Law ("UCL")
California Business and Professions § 17200

66. Plaintiff repeats, and incorporates herein by reference, all the foregoing paragraphs, and if necessary, pleads this cause of action in the alternative.

67. California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200, as well as deceptive or misleading advertising, *see Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (2014).

68. "Unfair competition" under Section 17200 is defined broadly to include "anything that can properly be called a business practice and that at the same time is forbidden by law."

---

[7] Mr. Allan also sent Defendant an August 17, 2022 letter, putting Defendant on further notice of many of the claims in this Complaint, to which Defendant did not substantively respond. *See* Exhibit G.

COMPLAINT—13
[3:23-cv-00074]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (internal quotation marks and citations omitted).

69. Thus, with regard to the UCL's "unfair" and "unlawful" prongs, Defendant has violated the EFTA and Regulation E by, *inter alia* (and as explained above), refusing to correct an error or provisionally recredit Mr. Allan's funds based on the unauthorized transfer of Mr. Allan's cryptocurrency. *See Davis v. HSBC Bank Nevada*, N.A, 691 F.3d 1152, 1168 (9th Cir. 2012) ("Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs."). Defendant's refusal has resulted in the continued loss of Mr. Allan's cryptocurrency.

70. Defendant's misleading advertisements of fraud protection in violation of the CLRA and FAL (as explained above) also constitute false advertising under the UCL. The pop-up did not remedy the prior web ads' representations that Mr. Allan was eligible for fraud protection if "Coinbase One" was listed in his settings and if he signed up to pay for the subscription.

71. Rather, the pop-up's late mention of additional conditions in un-emphasized, grey, plain text and smaller font provided inadequate inquiry notice, and was especially inconspicuous compared with the pop-up's other conspicuous features, such as the large shield and the "**Account Takeover Protection**" heading. *See Cullen v. Shutterfly Lifetouch, LLC*, No. 20-CV-06040-BLF, 2021 WL 2000247, at *8 (N.D. Cal. May 19, 2021) ("The subject language is in tiny print, that appears to be light gray in color, and there is no header or other indicator that would notify an individual of important contractual terms.").

72. In light of the references to the additional conditions themselves being totally conspicuous, Mr. Allan's click on the "Got it" button hardly manifests assent (let alone "unambiguously manifest" asset) to such conditions. Defendant's subsequent charging Mr. Allan for a Coinbase One subscription further added to the reasonable impression that he had purchased account takeover protection.

73. A business practice is also "unfair" under the UCL if it "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers

COMPLAINT—14
[3:23-cv-00074]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473, 49 Cal.Rptr.3d 227 (2006).

74. Here, Defendant's assurances of Coinbase One account protection misled Mr. Allan, as well as (on information and belief) other consumers into purchasing cryptocurrency through Defendant and selecting Defendant to hold that cryptocurrency, which was subsequently stolen.

75. In addition, on information and belief, Defendant's measures for preventing fraud are inferior to its competitors and far below its customers' reasonable expectations. Defendant's lack of industry-standard safeguards aimed at identifying fraud indicators before approving unauthorized fund transfers contributed significantly to the theft of Mr. Allan's cryptocurrency.

76. Instead, on information and belief, Defendant has identified (and identifies) fraud indicators only after receiving a consumer's report of an unauthorized electronic fund transfer. Meanwhile, on information and belief, Defendant refrains from expending the resources necessary to detect fraud before it occurs, while benefitting financially from such transfers (and from subsequent transfers made by bad actors using the stolen funds), and while avoiding having to recredit the accounts of users harmed by unauthorized electronic fund transfers.

77. Or worse, Defendant does incorporate similar measures for preventing fraud as its competitors, but knowingly turns a blind eye to such fraud indicators. For example, it is entirely possible that Defendant does hire third parties to generate fraud scores before approving electronic transfers, which identified the combination of high-risk factors (e.g., a device that was nothing like Mr. Allan's, located in the wrong half of the continent as Mr. Allan's residence, and change of his normal email to one with a bogus domain) prior to the theft of Mr. Allan's funds, and Defendant *still* approved the transfer.

78. Whether Defendant refrains from implementing industry-standard fraud prevention measures, or implements them and still intentionally permits high risk transfers, its practices are immoral and unethical and caused significant injury to Mr. Allan and other consumers. Such injuries far outweigh any conceivable benefit from Defendant's lack of vigilance (such as arguably

COMPLAINT—15
[3:23-cv-00074]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

greater speed in approving fund transfers for Defendants' users whose shady behavior would constantly raise similar red flags of fraud).

79. Accordingly, Plaintiff has suffered injury in fact as a result of Defendant's unfair competition, by the loss of the value of his cryptocurrency funds at the time they were stolen, and is entitled to restoration of such losses and of other financial benefits Defendant derived from Plaintiff's loss.

**FOURTH CAUSE OF ACTION**
Negligence
Cal Civ. Code § 1714

80. Plaintiff repeats, and incorporates herein by reference, all the foregoing paragraphs, and if necessary, pleads this cause of action in the alternative.

81. Defendant has a duty to safeguard its users' funds, including cryptocurrency, against theft. This duty includes implementing industry-standard fraud detection and prevention measures.

82. By refraining from exercising the ordinary care requiring such measures, Defendant has not only breached this duty, but encouraged bad actors to target Defendant's platform and users.

83. Had Defendant designed such measures to adequately serve its users before unauthorized electronic fund transfers occur, such transfers would be and would have been prevented. For example, Defendant's competitors reasonably implement such measures and prevent unauthorized electronic funds transfers under nearly identical circumstances that result and have resulted in theft on Coinbase's platform.

84. On information and belief, Defendant is well-aware that its practices encourage, and are a substantial factor in, and have resulted and continue to result in, the theft of its users' funds. Such losses are especially frustrating by Defendant's repeated refusals to correct such errors by recrediting (even partially) its users' accounts, and instead attempting to pass the responsibility for fraud completely onto its users.

COMPLAINT—16
[3:23-cv-00074]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

85. Meanwhile, on information and belief, Defendant continues to benefit from such practices by saving resources that it would otherwise be spent on detecting fraud and protecting its users, and by otherwise benefiting financially from such transfers that wouldn't have occurred had Defendants proactively detected and prevented the fraud. By not correcting errors or provisionally recrediting accounts as required by the EFTA, Defendant also preserves additional funds.

86. On the other hand, Coinbase users like Mr. Allan bear the brunt of Defendant's risky practices by losing hard-earned cryptocurrency funds.

## FIFTH CAUSE OF ACTION
Unjust Enrichment

87. Plaintiff repeats, and incorporates herein by reference, all the foregoing paragraphs, and if necessary, pleads this cause of action in the alternative.

88. On information and belief, Defendant benefits from saving resources that would otherwise be spent on basic fraud prevention measures implemented by other financial institutions. On information and belief, Defendant benefits financially from unauthorized electronic funds transfers. Defendant also benefits from not correcting errors or provisionally recrediting accounts, as required by the EFTA.

89. Thus, Defendant benefits from failing to proactively detect fraud, and profits at its customers' expense.

90. Accordingly, Plaintiff is entitled to restitution for the value of his cryptocurrency funds at the time they were stolen, as well as other financial benefits that Defendant derived from the unauthorized electronic funds transfer.

## SIXTH CAUSE OF ACTION
Breach of Contract and of Duty of Good Faith and Fair Dealing

91. Plaintiff repeats, and incorporates herein by reference, all the foregoing paragraphs, and if necessary, pleads this cause of action in the alternative.

COMPLAINT—17
[3:23-cv-00074]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

92. Defendant entered into at least one implied and/or express agreement with Mr. Allan. For example, Defendant agreed to grant Mr. Allan eligibility for account takeover protection and for a Coinbase One beta subscription after listing it in his "Settings," and receiving payment for the service.

93. Yet Defendant has refused to perform according to that agreement, by denying Mr. Allan such account protection. That denial has deprived Mr. Allan of the value of his stolen cryptocurrency.

94. In addition, Defendant agreed to safely hold Mr. Allan's cryptocurrency funds. Under that agreement, Mr. Allan reasonably expected Defendant to implement minimum and industry-standard safeguards against fraud.

95. Yet Defendant turned a blind eye to red flags of fraud, until after Mr. Allan's cryptocurrency funds were stolen. In so doing, Defendant not only breached its agreement to hold Mr. Allan's funds, but also violated its duty of good faith and fair dealing.

96. Defendant's violation of its duty and breach of the agreement directly resulted in the loss of Mr. Allan's funds.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

A. Compensatory damages pursuant to the EFTA, 15 U.S.C. § 1693(m);

B. Treble damages pursuant to the EFTA, 15 U.S.C. § 1693(f);

C. Statutory damages pursuant to the EFTA, 15 U.S.C. § 1693(m);

D. Attorneys' fees pursuant to the EFTA, 15 U.S.C. § 1693(m);

E. Costs of litigation pursuant to the EFTA, 15 U.S.C. § 1693(m);

F. Pre-judgment interest pursuant to federal law;

G. Post-judgment interest pursuant to 28 U.S.C. § 1961(a);

H. Actual damages pursuant to Cal. Civ. Code, § 1780(a)(1);

I. Restitution of stolen funds pursuant to Cal. Civ. Code, § 1780(a)(3);

J. Punitive damages pursuant to Cal. Civ. Code, § 1780(a)(4);

COMPLAINT—18
[3:23-cv-00074]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

K.  Attorneys' fees and court costs pursuant to Cal. Civ. Code, § 1780(e);

L.  Restoration of Plaintiff's stolen funds, including any fees gained by Defendant from its unfair and deceptive practices pursuant to California Business and Professions Code § 17203;

M.  An injunction prohibiting Defendant's false and misleading advertising practices pursuant to Cal. Civ. Code, § 1780(a)(2) and to California Business and Professions Code § 17203;

N.  Actual damages, including but not limited to consequential damages and interest, pursuant to Cal. Civ. Code § 3281, *et seq.*; and

O.  Any other relief the Court deems proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby respectfully demands a trial by jury in this matter.

Dated: January 6, 2023

Respectfully submitted,

NEWMAN DU WORS LLP

/s/ John Du Wors
John Du Wors, State Bar No. 233913
2101 Fourth Avenue, Suite 1500
Seattle, WA 98121
Phone:     (206) 274-2800
Facsimile: (206) 274-2801
Email:     john@newmanlaw.com

Counsel for Plaintiff
Matthew Allan

COMPLAINT—19
[3:23-cv-00074]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800